NICHOLS & SHEPHERD Co., Appellant, v. MARTIN METZGER, Respondent.

Kansas City Court of Appeals, February 2, 1891

1. **Instructions:** SUFFICIENTLY CLEAR. In an action on an alleged promise to pay for a machine, where there was but one promise talked of and referred to in the trial, and the jury could not fail to get at the meaning of the court in the instructions, the use of the word "sale" where the word "delivery" might have technically been better is no error.

2. **Verdict:** SETTING ASIDE: EVIDENCE TO SUPPORT: TRIAL COURT AND APPELLATE COURT. On a review of the record in this case, it is *held* that the trial court even would not have been justified in setting aside the verdict on the ground of the failure of evidence to support it, much less the appellate court.

3. **Attorneys:** MISCONDUCT: APPELLATE PRACTICE: OBJECTION TAKEN WHEN. An attorney in advocating his client's cause will be permitted a liberal use of invective sarcasm and rhetoric, but when he goes out of the issue, and under the guise of an argument becomes a witness in the cause, appellate courts may set aside the judgment so obtained ; but objections to such conduct must be made promptly at the time so that the trial court may have an opportunity to remedy the fault in the presence of the jury, and it will not be permitted appellant to "sit and say nothing," take the chances of a verdict, and, thereafter, for the first time, complain.

4. **Trial Practice:** ABSENCE OF JUDGE: OBJECTION. It is *error* for the judge to absent himself from the court room leaving the trying cause in charge of an attorney ; but, where both parties assent to such absence and to the "deputized" attorney being in charge, neither can thereafter complain. *Semble*, complaint of improper remarks of an offending attorney may be made to such "deputized judge."

*Appeal from the Adair Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

*L. F. Cottey*, for appellant.

( 1 )  Defendant's first and  second instructions are
misleading, because they·use the word "sale" instead
of ·"delivery," and  his third instruction is subject to
the same objection in  the use of  the word  "sold"
instead of "delivered."  The jury no doubt understood
that these instructions referred to  the contract made by
Fred Metzger for  the purchase of the machine.  That
contract was not in  issue, and 'amounted merely to a
conditional agreement for a sale.   "It was at best an
executory contract, no present title passing."  *Green v.
Evans*, 38 Mo. App. 517.  ( 2 ) . Instructions calculated
to mislead the jury, by reason of being equivocal or
ambiguous, are erroneous.  *Legg v. Johnson*, 23  Mo.
App.  590;  *Belt  v.  Goode*, 31 Mo. 128 ;  *Donahoe v.
Railroad*, 83 Mo. 560 ;  *Greer v. Parker*, 85 Mo. 107 ;
*Dunn v. Dunnaker*, 87 Mo. 597.  It will be observed
in this connection that instructions 1, 2 and 3, above,
are in conflict with number 5 for defendant, which
announces the doctrine of defendant's liability, in case
he promised to pay before the machine was delivered,
while 1, 2 and 3 release defendant unless he promised
to pay before the sale.   Each instruction must be correct
in itself ; they must all be consistent with each  other ;
and  the whole taken together must present  but one
doctrine, or the jury will have nothing to guide them.
*Thomas v. Babb*, 45 Mo. 384; *Stevenson v. Hancock*,
72 Mo. 612 ; *Modisett v. McPike*, 74 Mo. 636 ; *Price v.
Railroad*, 77 Mo. 508 ; *Frederick v. Allgaier*, 88 Mo.
598 ; *State v. Herrell*, 97 Mo. 105.  ( 3 )  There was no
evidence in the case of any agreement that the Fred
Metzger notes were taken in payment for the machine ;

and for this reason defendant's fourth instruction should not have been given. An instruction should not be given where there is no evidence to authorize it. *Bertiaux v. Dillion*, 20 Mo. App. 603 ; *Selby v. McCullough*, 26 Mo. App. 56 ; *Wear v. Lee*, 26 Mo. App. 99 ; *McMurray v. Taylor*, 30 Mo. 263 ; *Doebling v. Loss*, 45 Mo. 150 ; *Leabo v. Goode*, 67 Mo. 126 ; *Riggs. v. Goodrich*, 74 Mo. 108. (4) The rule is well settled in civil cases, that where the verdict is not supported by the evidence, or is so strongly against the weight of the evidence, that it must be ascribed to passion, prejudice or partiality and not to that calm weighing of the facts in evidence which should always characterize the deliberations of a jury, the appellate courts must and will interfere, and that, too, whether the verdict be for plaintiff or defendant. *Welch v. McAllister*, 13 Mo. App. 89 ; *Lionberger v. Pohlman*, 16 Mo. App. 392 ; *Borgraeffe v. Knights of Honor*, 22 Mo. App. 127 ; *Friesz v. Fallon*, 24 Mo. App. 439 ; *Fairgrieve v. Moberly*, 29 Mo. App. 141 ; *Hesse v. Railroad*, 36 Mo. App. 163 ; *Deck. v. Field*, 38 Mo. App. 674 ; *Whitsett v. Ransom*, 79 Mo. 258 ; *Spohn v. Railroad*, 87 Mo. 74 ; *Garrett v. Greenwell*, 92 Mo. 120 ; *Caruith v. Richeson*, 96 Mo. 186 ; *State v. Primm*, 98 Mo. 368. The same rule is of universal application in criminal cases, as may be seen by the following authorities : *State v. Thornton*, 1 Mo. App. 92 ; *State v. Perkins*, 11 Mo. App. 82 ; *State v. Brosius*, 39 Mo. 535 ; *State v. Mansfield*, 41 Mo. 470 ; *State v. Daubert*, 42 Mo. 239, 242 ; *State v. Marshall*, 47 Mo. 378 ; *State v. Burgdorf*, 53 Mo. 65 ; *State v. Jaeger*, 66 Mo. 173 ; *State v. Priestly*, 74 Mo. 24 ; *State v. Castor*, 93 Mo. 242 ; *State v. Primm*, 98 Mo. 368. (5) The conduct of an attorney in appealing to the prejudices of jurors by alluding in his arguments to facts foreign to the merits of the controversy, and which are unwarranted by the evidence, is ground for a new trial. And especially so, when the verdict sought to be

reversed appears to be against the weight of the evidence. *Marble v. Walters*, 19 Mo. App. 134; *Gibson v. Zeibig*, 24 Mo. App. 65 (and cases there cited in opinion on rehearing); *Bishop v. Hunt*, 24 Mo. App. 373; *Kock v. Hebel*, 32 Mo. App. 103; *State v. Lee*, 66 Mo. 165; *Brown v. Railroad*, 66 Mo. 588; *State v. Barham*, 82 Mo. 67; *Ritter v. Bank*, 87 Mo. 574; *State v. Jackson*, 95 Mo. 623; *State v. Young*, 99 Mo. 666; *Moss v. Sanger*, 12 S. W. Rep. (Tex.) 619.

*Geo. R. Balthrope*, for respondent.

(1) Plaintiff's petition having based its cause of action upon a verbal promise of defendant to pay, claimed to have been made before the sale of the machinery to Fred Metzger, the question of time of delivery is immaterial, and the evidence must clearly show that such promise was made before the sale, or plaintiff fails; for if the promise was made after the sale defendant became as surety or guarantor, and both promises would have to be in writing. *Glenn v. Lehnen*, 54 Mo. 45; *Rottman v. Pohlman*, 28 Mo. App. 405; *Walther v. Merrell*, 6 Mo. App. 379. And first and second instructions given for defendant are in perfect harmony with the decisions cited above; and if the instructions given for defendant are in conflict with each other, which we do not concede, yet it is not a reversible error, if the verdict of the jury, as in this case, is according to the burthen and weight of the evidence, and the plaintiff is not injured thereby. *Sawyer v. Drake*, 34 Mo. App. 472. (2) The verdict in this cause being fully supported by the overwhelming preponderance of the evidence which shows the finding to be for the right party, and demonstrating the fact that if a new trial was awarded the findings would be the same, precludes the idea of the jury being prejudiced, biased or impartial in their judgments, and appellate courts will not interfere. *Railroad v. Ring*, 58 Mo. 491; *Lewis v. Conway*,

74 Mo. 49; *Hendrick v. Geryhon*, 50 Mo. 154; *Bank v. O'Connell*, 23 Mo. App. 165; *Newberger v. Friede*, 23 Mo. App. 631; *Schooler v. Schooler*, 18 Mo. App. 69; *Fell v. Rich Hill Co.*, 23 Mo. App. 216; *Brink v. Railroad*, 17 Mo. App. 177; *Dunn v. Baley*, 58 Mo. 134. (3) The verdict of the jury being fully supported by the evidence and for the right party, objectionable remarks of counsel will not invalidate judgment. *Bank v. Clayton*, 6 Mo. App. 587; *State v. Zanberg*, 8 Mo. App. 525; *Bridge Co. v. Ring*, 58 Mo. 491; *Fell v. Rich Hill Co.*, *supra; Brink v. Railroad, supra; Conley v. Doyle*, 50 Mo. 238; *McLane v. Paschal*, 11 S. W. Rep. (Tex. Supt. Ct.) 837.

GILL, J.—This suit was brought in the Knox circuit court, and after a mistrial plaintiff applied for and obtained a change of venue to Adair circuit court, where, after one more mistrial, it was again tried at the April term, 1890, with verdict and judgment for defendant, from which plaintiff has prosecuted its appeal. The petition in substance alleges the incorporation of plaintiff company, and that T. J. Wright & Co. are plaintiff's agents at La Belle, Missouri, for the sale of threshing machines; that Fred Metzger, a son of defendant—a young man of limited means—applied to plaintiff's agents for the purchase of the machine in question, and that plaintiff's agents refused to sell him the machine unless the defendant would go his security or pay or agree to pay the cash for the same; that, shortly prior to the sale and delivery of said machine to Fred, his father, the defendant, came to ·La Belle with him, and then and there agreed with plaintiff's agents that he would pay cash for said machine, in the sum of $990, if sold and delivered to his son Fred; that, relying upon the faith of defendant's promise alone to pay for said machine, they sold and delivered it to defendant's son Fred, and would not have sold and delivered it but for such promise; * * * that the defendant had refused

to pay for the same according to promise, and asked for judgment for $990. The answer of defendant admits the purchase of the machine by his son Fred, but denies that defendant agreed to pay for the same in the sum of $990, or any sum ; that plaintiff's agent sold said machine to his son Fred upon his own credit and took his notes therefor. Plaintiff replied denying the new matter set up in the answer.

The evidence discloses that the old man Metzger owned a farm some eight miles from La Belle, Missouri, which was occupied and cultivated by Fred Metzger, his son ; that Wright, who was plaintiff's agent at La Belle, hearing that young Metzger desired to purchase a steam-thresher, on June 19, 1888, called on said Fred Metzger, and after some negotiation made a contract for the sale of a machine at the gross sum of $1,100 to be paid in three installments of $370, $370 and $360, due respectively, December 20, 1888, December 20, 1889, and December 20, 1890, which should be evidenced by three promissory notes bearing seven per cent. interest from date of delivery of machine. There was also a stipulation that Fred Metzger, the purchaser, might pay cash for the machine, and should be allowed ten per cent. discount on all money paid by October 1, thereafter. The terms of the contract were evidenced by a writing signed by said Fred Metzger. The machine was thus ordered on June 19, and was ready for delivery at La Belle, on July 17, 1888, when, it seems, the old man Metzger (defendant herein) went with his son Fred, and another man, to La Belle, to see, or to get, the machine. It was at this time ( a month after the order for the machine was given by Fred, and when its delivery to him was expected ) that plaintiff's agent testifies to a promise made by defendant that he would pay the $990 cash for the machine, and thereby save the discount, and the agent also says that he would not have delivered the thresher except for that promise. The old man denies any such promise, and even goes further

and testifies that he told the agent that he would not be responsible for the price of the machine, and that he advised Fred to have nothing to do with it. He is corroborated by Fred Metzger, and another party who attended them on the trip to La Belle. And on the other hand the old man is to some extent impeached by some other witnesses, who swore to statements he made somewhat in conflict with those made in court. It is, however, beyond dispute, that about this time ( in the latter part of July, 1888 ), Fred Metzger was permitted to take the machine on giving the three notes hereinbefore referred to, and which were signed by him ( Fred ) alone.

This case then, for the plaintiff, is that of an original promise alleged to have been made by defendant on July 17, 1888, on the faith of which plaintiff delivered the thresher to defendant's son, the purchaser. Evidence for and against the existence of such a promise was submitted, and thereupon the court gave, among others, the following instructions to the jury:

For the plaintiff :—

" 1. The court instructs the jury that it is admitted by the pleadings in the case, that Fred Metzger made the written contract offered in evidence for the purchase of the threshing machine in question."

" 5. The sole and only question for the jury to determine is, did Martin Metzger promise to pay $990 for the threshing machine, and did plaintiff's agent deliver the machine to the son, Fred Metzger, relying alone on such promise ? Under the pleadings and the evidence in the case the jury have nothing to do with any defects or imperfections, if any, in said machine.

" If the jury shall believe from the evidence in this case that Martin Metzger promised to pay for the machine in question, and that said machine was delivered to Fred Metgzer on the faith of defendant's promise alone to pay for it, then the jury should find for the plaintiff in the sum of $990 with six per cent. interest from October 27, 1888, the date of bringing this suit

"6. Although the jury may believe from the evidence that Fred Metzger left his three unsecured notes with Wright & Co., and still if the jury believe from the evidence they were not accepted in settlement but only held till security could be given, then this fact that they were left with Wright & Co. will not release defendant from any promise the evidence shows he made to pay for said machine."

For the defendant :—

"1. The jury are instructed the burden rests upon the plaintiff to prove by a fair preponderance of the evidence, that the defendant agreed with the agent of the plaintiff to pay for the machine before the sale of said machine, and that, unless the plaintiff has so proven such a promise by defendant, the verdict of the jury should be in favor of the defendant.

"2. If the jury shall believe from the evidence that the defendant did not agree to pay for the machine before the sale of said machine, then in such case the verdict should be for defendant.

"3. The court further instructs the jury that if they believe from the evidence that plaintiff's agent Wright sold the machinery in question upon the sole promise and agreement of Fred Metzer to pay for same, then they will find for the defendant.

"4. And the court further instructs the jury that if. they believe from the evidence that, at the time Wright delivered the machine in question to Fred Metzger, he as the agent of plaintiff accepted the said three promissory notes read in evidence, solely relying upon Fred Metzger for the payment of said notes, then the jury will find for the defendant.

"5. If the jury shall believe from the evidence that before the machine was delivered to Fred Metzger and taken from La Belle, that defendant expressly told plaintiff's agent Wright that he would not pay for said machine, the verdict should be for defendant."

Appellant's contentions are, in words of counsel's brief: " *First.* That the first and second instructions given for the defendant are improper and misleading because they use the word 'sale' when it should have been the word 'delivery;' and that the third instruction given for defendant is improper and misleading because it uses the word 'sold' when it should have been the word 'delivered;' and that the fourth instruction given for the defendant was improper because there was no evidence to support it. *Second.* That the verdict is against the weight of the evidence, and is not supported by the evidence and can only be accounted for on the ground of prejudice, passion or partiality, and not to that calm weighing of facts which should always characterize the deliberations of a jury. *Third.* That the attorney for the defendant, George R. Balthrope, in his closing address, and in the absence of the judge of the court, made use of improper language, which was intended to, and which did, prejudice the minds of the jury against the plaintiff." We answer these objections in the order named.

I. We can see nothing in this point. Whether the word "sale" or "delivery" was proper, and which used, we cannot discover any possible harm, under the circumstances. There was but one promise talked of and referred to in the trial, and that was an alleged undertaking of defendant Metzger, when his son went for the machine, July 17, 1888. The jury could not fail to get at the meaning of the court, which was, did the father that day before the machine was delivered to the son promise the agent Wright that he would pay the $990 cash price for the machine? The court had already, in the same charge, in the words of plaintiff's instructions, declared, that "the sole and only question for the jury to determine is, did Martin Metzger promise to pay $990 for the threshing machine, and did plaintiff's agent deliver the machine to the son Fred Metzger relying alone on such promise?" If this promise was made

as claimed by the plaintiff, on said July 17, and on the faith thereof plaintiff had parted with its property, then the jury was clearly advised to find for the plaintiff, otherwise not. This was the entire matter at issue, and the jury could not have misunderstood it.

Defendant's instruction, numbered 4, is the "companion piece" of the other instructions commented on, and contains no error.

II. The next point, to-wit, "that the verdict is against the weight of the evidence," etc., must be summarily disposed of by the remark that, upon reading this record and the entire evidence in this case, it seems that the *trial court* even would scarcely have been justified in setting aside the verdict for the reason here assigned. Much less is it an instance of that manifest misconduct by a jury demanding reparation at the hands of this appellate court. It does not appear a case where the "verdict must be ascribed to prejudice, passion or partiality, and not to that calm weighing of the evidence, which should always characterize the deliberations of a jury." But there appears here testimony on the two sides of a disputed fact, and so nearly equipoised, that only the trial court (if even that) could be asked to interfere.

III. Next, and last, as to the alleged improper language used by defendant's counsel in his closing argument to the jury. For a clear understanding of the facts giving rise to this contention we quote bodily from the bill of exceptions, and from the affidavits giving the portion of counsel's speech objected to. First we quote from the bill of exceptions as follows :

"During the argument of said cause after supper, and when attorney Geo. R. Balthrope had just begun to make the closing address to the jury on behalf of the defendant, the judge stepped down from the bench, and in passing asked Mr. Hollister, one of defendant's attorneys, if he had any objection to the judge going down to the postoffice for a few minutes. Mr. Hollister

replied that he had not, and the judge walked out. This request and answer was made in the presence and hearing of Mr. Cottey, plaintiff's attorney, who made no objection. Upon the judge leaving the courthouse, Mr. Johnson, of the Kirksville bar, came in and took the judge's chair and remained during the argument. After the argument was closed, Mr. Johnson sent the jury to their room, without objection, to consider their verdict for a short time, and then discharged the jury until next morning. The judge did not return to the courthouse again that evening, and was not in the courthouse at the time Mr. Balthrope made use of the language complained of in plaintiff's motion for a new trial. The judge of the court was present when the jury returned next morning to consider their verdict, also when it was reported."

And the following is the language of attorney Balthrope, addressed to the jury in the absence of the presiding judge:

"Gentlemen of the jury, you are all farmers and you can understand the situation here. The defendant is a poor old German farmer who lives down here in Jeddo township, Knox county, Missouri; about seventy-five years old, with one foot in the grave and the other almost there. If this verdict goes against him costs and all for $1,500 or $1,600, it will take the shingles off of his house to pay it. He has made his money by hard labor, and now you are going to reduce him to poverty in his old days. On the other hand the plaintiff is a big corporation with headquarters at Battle Creek, Michigan, worth millions of dollars, and has no sympathy; it can't sympathize because it is a corporation and has no soul." And he the said attorney in his address further referred to the plaintiff as being like Shylock the merciless Jew "who demanded his pound of flesh without regard to the rights of others."

While much latitude is given the advocate, and he will be permitted a liberal use of invective, sarcasm or

rhetoric in presenting his client's cause to the jury, there is yet a boundary beyond which he must not go. In cases of gross misconduct in this respect—when it appears that verdicts may have been brought about by means of argument on matters not in issue, and not in evidence—when the advocate becomes, under the guise of an argument, a witness in the cause—the appellate courts have on numerous occasions set aside judgments thus procured.   Now as to the above-quoted remarks of defendant's attorney, it may be well questioned, if, in some respects, they are not without the scope even of a liberal indulgence.   The sole question before the jury was, did defendant agree with the plaintiff corporation to pay for the threshing machine sold to his son?   It was the province of the jury to fairly try and impartially determine that issue.   The supposed wealth of the plaintiff, or the assumed poverty of the defendant, in no way concerned the correct decision of that question.   There was no testimony in the case (and legally could be none) even tending to prove defendant's poverty and that a verdict against him "would take the shingles from his house," nor on the other hand that plaintiff's corporation was worth millions.   The attorney in these statements to the jury was traveling outside the record and himself assuming the position of an unsworn witness to immaterial facts.   If there was any defined purpose in such conduct by the attorney, it must have been to excite the exercise of a prejudice supposed to exist in the minds of the jury—to call forth a verdict, not from the legal evidence in the case, but rather as a product of a partiality for a seventy-five-year old German farmer.

Be this as it may, however, plaintiff in this particular case is in no condition to complain, since by failing to object to the remarks at the time, exception thereto was waived.   It is a well-understood rule in such cases, that immediately upon the utterance of the offending

matter objection thereto must at the time be interposed, so that the impertinent remarks may, in a proper manner, be withdrawn, or that the judge may rebuke the offending counsel and in presence of the jury correct the error. 1 Thompson on Trials, sec. 957. It will not be permitted the opposing counsel to " sit and say nothing,"—take the chances on a verdict and thereafter, for the first time, complain. But plaintiffs' counsel insists, that he could not, at the time, object to the offensive remarks, because of the absence of the presiding judge. There can be no question, that by absenting himself from the court room and leaving the trying cause in charge of an attorney manifest error was committed. Judicial functions cannot be delegated, nor a deputy judge created by the circuit judge calling in a bystander. There is no law, constitutional or statutory, in this state that permits the circuit judge voluntarily to absent himself from the courthouse, while a cause is being tried, and repose the duties of trial judge on an attending lawyer or other person. *Davis v. Wilson*, 65 Ill. 527; *Hays v. State*, 58 Ga. 36; 1 Thompson on Trials, sec. 211. But again the rule applies, that as plaintiff was present at the time, and in effect assented to the absence of the trial judge, and without objection allowed another to preside in his stead, it must abide the result. The officer whose duty it was to preside at the trial of this cause, when the last argument was being made, by and with the consent of both sides to the controversy, went from the court room to his home, leaving an attorney in charge. This attorney, too, presided, in open court and when the argument was concluded sent the jury out for consultation. They failed to agree that night and the attorney, so named by the judge, called the jury in and under the usual charge permitted them to separate for the night. To all this plaintiff's counsel consented, and we do not think now he should be allowed to complain of the

error.   If Mr. Johnson ( the deputized judge ) was suffi-
cient for acts thus performed, there would seem to be
no reason why he should not be amply sufficient to
require the offending attorney to adhere to the line of
legitimate argument.

The judgment, therefore, of the circuit court is
affirmed.   All concur.